UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLIE BYAS, o/b/o J.J.B.,

                Plaintiff,          Civil Action No. 14-11827
                                       Honorable Stephen J. Murphy, III
                                       Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [21, 24]**

Hollie Byas ("Byas") brings this action on behalf of her minor son, J.J.B. ("Plaintiff"),[1] pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [21, 24], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [24] be DENIED, Plaintiff's Motion for Summary Judgment [21] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of

---

[1] For convenience, the Court will refer to J.J.B., the minor child, as "Plaintiff" throughout this Report and Recommendation, although his mother, Hollie Byas, is the named plaintiff in this action.

benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

## II.    REPORT

### A.    Procedural History

On February 16, 2010, an application for SSI was filed on behalf of Plaintiff, alleging a disability onset date of February 2, 2010. (Tr. 170-76). This application was denied initially on May 26, 2010. (Tr. 89-92). A timely request for an administrative hearing was filed on Plaintiff's behalf, and a hearing was held on February 5, 2011, before ALJ Troy Patterson. (Tr. 26-41). Plaintiff was not represented by counsel at this hearing. (*Id.*). On July 15, 2011, ALJ Patterson issued a written decision finding that Plaintiff was not disabled. (Tr. 71-82). On December 5, 2011, however, the Appeals Council issued an Order, finding that ALJ Patterson's decision was not supported by substantial evidence, and remanding Plaintiff's case for a new hearing and for further development of the record. (Tr. 86-88).

A second administrative hearing was held on January 10, 2013, this time before ALJ Andrew Sloss. (Tr. 51-66). Both Plaintiff and his mother appeared and testified at the hearing, represented by attorney Robert Crites. (*Id.*). On January 31, 2013, the ALJ issued a written decision finding that Plaintiff is not disabled. (Tr. 10-22). On March 8, 2014, the Appeals Council denied review. (Tr. 1-3). On behalf of Plaintiff, Ms. Byas filed for judicial review of the final decision on May 7, 2014. (Doc. #1).

### B.    Background

#### 1.    Disability Reports

Plaintiff was born in March of 1999, making him almost eleven years old at the time his application for disability benefits was filed. (Tr. 180). In an undated disability report, Ms. Byas indicated that Plaintiff suffers from a learning disability. (Tr. 184). At the time of the report,

however, Plaintiff had not seen any physicians regarding his condition, nor was he taking any medication. (Tr. 184-85). At that time, Plaintiff was in fifth grade and was taking special education classes. (Tr. 186-87).

In an April 2010 daily activities report, Ms. Byas indicated that Plaintiff spends his days attending school, playing outside, watching television, playing video games, and doing homework. (Tr. 191). Ms. Byas reported that Plaintiff gets along well with others and has friends his own age. (*Id.*). He has problems with bedwetting, but no behavior problems. (*Id.*). He is able to perform household chores, such as cleaning his room, putting away clothes, and picking up toys, but he needs repeated instructions. (Tr. 192). He is able to care for his own personal needs, prepare food such as sandwiches or cereal, set the table, dust, sweep, and do his own laundry. (Tr. 193-94). Ms. Byas further indicated that Plaintiff "tries very hard" but "needs a lot of extra help with all school work or anything with reading or writing." (Tr. 194).

> ### 2.    *Hearing Testimony*

At the February 5, 2011, hearing before ALJ Patterson, Plaintiff was almost twelve years old and in the sixth grade. (Tr. 32). He had been diagnosed with attention deficit hyperactivity disorder ("ADHD") and was still in special education classes.[2] (Tr. 33-34). Ms. Byas testified that Plaintiff was, at that time, reading at the second grade level, was very emotional, became frustrated easily, and needed to be redirected often. (*Id.*). But, Plaintiff was well-behaved at school, had friends, and did not get in trouble often. (Tr. 35-36). He was playing basketball on a team and attended church regularly. (Tr. 36). He was able to get himself ready for school (although he frequently needed "reminders"), but he needed assistance with homework. (Tr. 37).

---

[2] Although Plaintiff also suffers from asthma and allergies, he has not challenged the ALJ's findings with respect to his physical impairments. Thus, the Court will focus its discussion on Plaintiff's mental impairments.

3

He was taking Concerta for ADHD but was not seeing a counselor or therapist.  (Tr. 38).

At the time of the January 10, 2013, hearing before ALJ Sloss, Plaintiff was thirteen years old and in the eighth grade.  (Tr. 54).  He testified that he has "[a] lot of friends," and he is able to play outside, ride bikes, and play video games with them.  (Tr. 55-56).  He indicated that he gets along with his siblings and has not been disciplined recently at school.  (Tr. 56).  Ms. Byas also testified at this hearing, indicating that Plaintiff's ADHD causes him to have difficulty following directions and finishing tasks, and his learning disability makes it difficult for him to read and write.  (Tr. 57-58).  Ms. Byas further testified that, at home, Plaintiff has difficulty following through on even the simplest tasks and often needs to be redirected.  (Tr. 64).

### 3.    Medical Evidence

On May 19, 2010, Plaintiff underwent a consultative psychological examination with Dr. Matthew Dickson.  (Tr. 273-76).  At the time, Plaintiff was eleven years old, and he reported difficulty focusing at school, staying on task, and with reading and spelling.  (Tr. 273).  Plaintiff indicated that he had friends both in school and outside of school and enjoyed spending time with others.  (Tr. 274).  On examination, Dr. Dickson noted that Plaintiff was "restless, fidgety and made mouth noises" and "squirmed in his seat."  (*Id.*).  Dr. Dickson diagnosed Plaintiff with ADHD, a reading disorder, and a disorder of written expression, and indicated that his "abilities to attend to, acquire, and use information, as well as his ability to complete tasks, are moderately impaired."  (Tr. 275).  Overall, Dr. Dickson opined that Plaintiff's condition "would moderately impair his ability to maintain age appropriate behaviors."  (*Id.*).

On May 26, 2010, a Childhood Disability Evaluation form was completed by state agency medical consultant Paul Liu, D.O.  (Tr. 277-85).  Dr. Liu concluded that Plaintiff has a "marked" limitation in attending and completing tasks and "less than marked" limitations in acquiring and using information, interacting and relating with others, moving about and

manipulating objects, caring for himself, and health and physical well-being.  (Tr. 282-83).

     4.  *School Records and Evaluations*

      a.  *Teacher Questionnaires*

  A teacher questionnaire was completed on April 27, 2010, by Plaintiff's fifth-grade teacher, Amanda Griffith.  (Tr. 199-206).  Ms. Griffith noted that Plaintiff was reading at the second grade level and that his math and written language skills were at the third grade level.  (Tr. 199).  She opined that Plaintiff has problems with acquiring and using information; specifically, Plaintiff has a "very serious problem" comprehending oral instructions and an "obvious problem" reading and comprehending written material, comprehending and doing math problems, expressing ideas in written form, learning new material, and recalling and applying previously learned material.  (Tr. 200).  Ms. Griffith also indicated that Plaintiff is "not an independent worker," "needs clarification/repeated directions," and requires "repeated practice." (*Id.*).  In the domain of attending and completing tasks, Ms. Griffith opined that Plaintiff has a "very serious problem" focusing long enough to finish an assigned activity or task, refocusing to task when necessary, carrying out multi-step instructions, changing from one activity to another without being disruptive, and working without distracting others.  (Tr. 201).  She further opined that Plaintiff has a "serious problem" paying attention when spoken to directly, completing class/homework assignments, and working at a reasonable pace/finishing on time.  (*Id.*).  Ms. Griffith also noted that Plaintiff is "constantly moving," is "distracted by or distracts others," and has a "difficult time focusing on work."  (*Id.*).[3]

  Another teacher questionnaire was completed by Kelly Graves, Plaintiff's seventh-grade

---

[3] Ms. Griffith also opined that Plaintiff has problems in the domains of interacting and relating with others, moving about and manipulating objects, and caring for himself.  (Tr. 202-04). Because Plaintiff does not challenge the ALJ's determinations as to his limitations in these domains, the Court will not discuss the specifics of Ms. Griffith's opinion in these respects.

special education teacher, on April 16, 2012. (Tr. 216-26). At that time, Plaintiff was reading at the "end of 2nd grade" level; his math skills were at the "3rd-4th grade" level; and his written language skills were at the "2nd-3rd grade" level. (Tr. 216). In the domain of acquiring and using information, Ms. Graves opined that Plaintiff has an "obvious problem" reading and comprehending written material and expressing ideas in written form. (Tr. 218). She further indicated:

> [Plaintiff's] low reading and writing levels make it more challenging for him to read and understand the 7th grade content. [He] receives accommodations in all classes (per his Individualized Education Plan). For tests and quizzes he can move around or stand, have a scribe, take the test individually or in a small group, have adjusted or shortened written assignments, no deduction in grade for spelling errors, copy of teacher's notes and the ability to use a multiplication chart in math to check his work.

(*Id.*). In the domain of attending and completing tasks, Ms. Graves opined that Plaintiff has an "obvious problem" focusing long enough to finish an assigned activity or task and working without distracting himself or others. (Tr. 220). She further explained that he sometimes loses his work because of organizational problems and "does not always understand the grade level materials he is given." (*Id.*). In summary, Ms. Graves stated:

> [Plaintiff's ADHD] tends to get in the way of his learning on a fairly regular basis. He struggles to remain focused and on task for longer periods of time and does get off task frequently and then needs reminders to get back on task.

(Tr. 225).

### b.    Other School Records

When the Woodcock-Johnson Achievement Test was administered to Plaintiff on October 30, 2009 (when he was in fifth grade), he scored at the 2.3 grade level in broad reading, the 2.5 grade level in broad written language, and the 3.3 grade level in broad math. (Tr. 246). On the Wechsler Individual Achievement Test, administered on October 29, 2009, Plaintiff

6

scored at the 2.1 grade level in spelling and word reading, the 3.0 grade level in written expression, the 3.4 grade level in reading comprehension, and the 4.8 grade level in math reasoning. (Tr. 247). Pursuant to his November 2009 IEP, Plaintiff was receiving 3-4 hours of special education each day of the week. (Tr. 255).

When the Woodcock-Johnson Achievement Test was administered again to Plaintiff in October 2012 (when he was in the eighth grade), he scored at the 3.5 grade level in broad reading, the 4.2 grade level in broad written language, and the 5.6 grade level in broad math. (Tr. 490).

### C.    Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Social Security regulations set forth a sequential three-step process for determining children's disability claims: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. §416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder," whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children." *Id.* Further, to be found disabled based on meeting

7

a listed impairment, the claimant must exhibit all the elements of the listing.  *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not "meet" a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment.  *See* 20 C.F.R. §416.926a.  "Medical equivalency is covered by 20 C.F.R. §416.926; functional equivalency is covered by Section 416.926a."  *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment."  *Walls v. Comm'r of Soc. Sec.*, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. §416.926(a)).  A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or
>
> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. §416.926.  "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability.  If a plaintiff is only able to

8

demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers:  (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  *See* 20 C.F.R. §416.926a.  Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations in two of the six.  *See* 20 C.F.R. §416.926a(d).  An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities.  *See* 20 C.F.R. §416.926a(e)(3)(i).  A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities.  *See* 20 C.F.R. §416.926a(e)(2)(i).

### D.   The ALJ's Findings

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 2, 2010, the application date.  (Tr. 13).  At step two, the ALJ found that Plaintiff has the following severe impairments:  ADHD and a learning disorder.  (Tr. 13-15).  At step three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment.  (Tr. 15).  The ALJ also found that Plaintiff's impairments do not functionally equal any listing because he has a marked limitation in the domain of attending and completing tasks, and less than marked limitations in the domains of acquiring and using information, interacting

9

and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being. (Tr. 15-22). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (Tr. 22).

**E.    Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13;

10

*Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

    **F.**    **Analysis**

        *1.*    *Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Does Not Have an Impairment that Meets or Medically Equals a Listing*

As set forth above, the ALJ found that Plaintiff has the severe impairments of ADHD and a learning disorder. (Tr. 13-15). He then concluded that Plaintiff's impairments do not meet or medically equal Listings 112.11 (ADHD) or 112.05 (intellectual disability). (Tr. 15). Plaintiff challenges this conclusion.

In order for a claimant "to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The findings necessary to satisfy a listing must be determined on the basis of objective observations during an examination, not merely a report of an individual's alleged symptoms. *See* 20 C.F.R. §416.908 ("A physical or mental impairment must be established by medical

11

evidence consisting of signs, symptoms, and laboratory findings, not only your statements of symptoms.").

In this case, the ALJ explained that the "medical evidence of record does not satisfy the criteria for meeting or equaling" Listings 112.11 or 112.05. (Tr. 15). In the pages both preceding and following this conclusion, the ALJ reviewed the medical evidence, which supports his conclusion in this respect. (Tr. 13-22). *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (holding that, where the ALJ described evidence pertaining to the claimant's impairments earlier in his opinion, his limited explanation of the "meets or medically equals" prong was sufficient). Plaintiff has pointed to no specific evidence establishing that his impairments meet or medically equal the criteria of any listing, and no medical source has expressed such an opinion. In fact, the opinions of the state reviewing physician, Dr. Liu, and the consultative examiner, Dr. Dickson, are consistent with the ALJ's finding on medical equivalence. (Tr. 273-85). *See Soc. Sec. Rul.* 96-6p, 1996 WL 374180, at *2 (July 2, 1996) (state agency physician and psychological consultants are considered experts in evaluating disability issues). Thus, the ALJ's conclusion that Plaintiff's impairments do not meet or medically equal a listing is supported by substantial evidence.

> **2.** *The ALJ's Functional Equivalence Analysis*
> *Is Not Supported by Substantial Evidence*

As set forth above, the ALJ determined that Plaintiff's impairments do not functionally equal a Listing. (Tr. 15-22). In order to establish functional equivalence, Plaintiff must show "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. *See* 20 C.F.R. §416.926a(d). In order for a limitation to be considered marked, the child's impairments must interfere "seriously" with his ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(2)(i). A marked limitation also means a

12

limitation that is "more than moderate" but "less than extreme." *Id.* In order for a limitation to be considered extreme, the child's impairments must interfere "very seriously" with the ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(3)(i). An extreme limitation is the rating given to "the worst limitations." *Id.*

After reviewing the medical and other record evidence, reports, and hearing testimony, the ALJ found that Plaintiff has a "marked" limitation in the domain of attending and completing tasks, and "less than marked" limitations in the domains of acquiring and using information, interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being. (Tr. 15-22). Plaintiff challenges the ALJ's findings with respect to two domains: acquiring and using information and attending and completing tasks. (Doc. #21 at 10-31). Specifically, Plaintiff first argues that the evidence establishes an "extreme" limitation in attending and completing tasks; in the alternative, Plaintiff argues that even if his limitation in this domain is only "marked," the ALJ's functional equivalence determination is not supported by substantial evidence because he also has a "marked" limitation in acquiring and using information. (*Id.*).

> a.    *The ALJ's Finding that Plaintiff Has Only a*
> *Marked Limitation In Attending and Completing*
> *Tasks is Not Supported by Substantial Evidence*

The domain of attending and completing tasks addresses how well the child is able to focus and maintain his attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and the ease with which he changes them. *See* 20 C.F.R. §416.926a(h). An adolescent[4] (age 12 to attainment of age 18) should be

---

[4] Although Plaintiff was a "school-age child" at the time his application was filed, he turned twelve (becoming an "adolescent") in March 2011, which was well prior to the ALJ's January 2013 decision. Thus, the Court will analyze Plaintiff's abilities under the standards applicable to adolescents.

able to pay attention to increasingly longer presentations and discussions; maintain concentration while reading textbooks; independently plan and complete long-range academic projects; organize his materials and plan his time in order to complete school tasks and assignments; maintain attention on a task for extended periods of time; and not be unduly distracted by peers or unduly distracting to them in a school or work setting.  *See* 20 C.F.R. §416.926a(h)(2)(v). Examples of limited functioning in this domain include individuals who are easily startled, distracted, or overreactive to sounds, sights, movements, or touch; are slow to focus on, or fail to complete activities of interest; repeatedly become sidetracked from activities or frequently interrupt others; are easily frustrated and give up on tasks (including ones capable of being completed); or require extra supervision to remain engaged in an activity.  *See* 20 C.F.R. §416.926a(h)(3).

In concluding that Plaintiff has a "marked" limitation in the domain of attending and completing tasks, the ALJ said only:

> The undersigned notes that this domain is the most challenged.  School records and teacher questionnaires indicate significant difficulties related to attention, concentration and completing assignments.  The claimant also requires accommodation with completing assignments and test taking (Exhibits 4E, 9E, 1F, 5F and 10F).

(Tr. 18).  The problem, however, is that the ALJ does not explain how the evidence he cites in assessing Plaintiff's limitation in this domain – both in this section and throughout his decision – supports a finding that Plaintiff is markedly (but not extremely) limited.

As an initial matter, the ALJ's citations to Exhibits 4E and 9E refer to the teacher questionnaires completed by Ms. Griffith in April 2010, and Ms. Graves in April 2012, respectively.  (Tr. 199-206, 216-26).  As set forth above, Ms. Griffith opined that Plaintiff has a "very serious problem" (the most serious rating of the five available choices:  (1) no problem; (2) a slight problem; (3) an obvious problem; (4) a serious problem; and (5) a very serious problem)

14

that occurs "hourly" (the highest frequency of the four available choices: (1) monthly; (2) weekly; (3) daily; and (4) hourly) in five of thirteen items of functioning in this domain. (Tr. 201). These areas include focusing long enough to finish an assigned activity or task, refocusing to task when necessary, carrying out multi-step instructions, changing from one activity to another without being disruptive, and working without distracting self or others. (*Id.*). Ms. Griffith also noted that Plaintiff is "constantly moving," "distracted by or distracts others," and has a "difficult time focusing on work." (*Id.*). Under another domain, she indicated that Plaintiff is "impulsive" and has "difficulty focusing on and following directions." (Tr. 202).

Although the ALJ does cite generally to Ms. Griffith's report – which clearly supports a conclusion that Plaintiff has "significant difficulties related to attention, concentration and completing assignments" – he fails to adequately explain why he finds Plaintiff's limitations in this domain to be only "marked" rather than "extreme" when Ms. Griffith noted the most extreme limitations that were available to her – a "very serious problem" – in five different areas. The Commissioner attempts to overcome this failure by asserting that the ALJ "explained" that Ms. Griffith's report "was inconsistent with Ms. Graves's report, which found only 'obvious' problems (Tr. 13-14, 220)." (Doc. #24 at 19). This is inaccurate, however, as the ALJ articulated no such explanation. Ms. Graves' assessment of Plaintiff's limitation in this domain *was* less severe than Ms. Griffith's; however, the ALJ made *no* comparison of these two assessments in the portions of his decision cited by the Commissioner, nor did he explain why he believed Ms. Graves' assessment of Plaintiff's functioning to be more accurate. And, indeed, the fact that the ALJ cited Ms. Griffith's assessment *in support* of his conclusion that Plaintiff has "significant difficulties" attending and completing tasks (Tr. 18) is at odds with the Commissioner's argument that he *rejected* Ms. Griffith's opinions in favor of that of Ms. Graves.

15

The other evidence cited by the ALJ in support of his finding of a "marked" limitation in the domain of attending and completing tasks is equally unavailing.  For example, the ALJ cites Exhibit 1F (Tr. 242-69), but the vast majority of this exhibit relates to Plaintiff's learning disability and academic performance, which is far more relevant to his ability to acquire and use information than to his ability to attend and complete tasks.  *See* 20 C.F.R. §416.926a(g)(3) (examples of limited functioning in the domain of acquiring and using information include difficulty recalling important things learned previously and difficulty solving math problems).  And, indeed, the portions of this exhibit that do discuss Plaintiff's ability in the domain of attending and completing tasks – which are few and far between – actually support a conclusion that Plaintiff experiences significant difficulties in this domain.  For example, in a psychological evaluation report dated October 29, 2009,[5] the examiner noted that Plaintiff "needed some prompts to listen and stay focused while working.  A few breaks were taken for him to expel energy.  Psychomotor hyperactivity appeared in bursts and he was observed to stand up while leaning across the table while completing some of the academic tasks."  (Tr. 261).  In other words, it is unclear how Exhibit 1F supports the ALJ's conclusion that Plaintiff has only a marked limitation in attending and completing tasks.  Similarly, the ALJ cites Exhibit 5F (Plaintiff's April 2012 Individualized Education Plan ("IEP")) and Exhibit 10F (Plaintiff's October 2012 test scores and his November 2012 IEP), but both of these exhibits also address Plaintiff's academic limitations (i.e., his ability to acquire and use information), not his ability to attend and complete tasks.  (Tr. 286-98, 489-504).

In attempting to bolster the ALJ's conclusion, the Commissioner points to the ALJ's

---

[5] The Commissioner argues in her motion that evidence from 2009 is "irrelevant" because the alleged disability onset date is in February 2010.  (Doc. #24 at 23).  The Court notes, however, that the ALJ found such evidence relevant in some respects, as he explicitly cited to this October 2009 report as a basis for his findings.

16

observation that Plaintiff has never been held back a grade, and the fact that Plaintiff's 2012 school records indicate that his academic abilities "were improving." (Doc. #24 at 19 (citing Tr. 13, 14, 494)). The problems with these arguments are twofold: first, the ALJ did not actually *rely* on this evidence in support of his conclusion; and, second, this evidence does not actually relate to the domain of attending and completing tasks but, rather, to his ability to acquire and use information. *See Soc. Sec. Rul.* 09-3p, 2009 WL 396025, at *3 (Feb. 17, 2009) ("[p]oor grades or inconsistent academic performance are among the more obvious indicators" of a limitation in the domain of acquiring and using information). The Commissioner also argues that the ALJ's finding that Plaintiff has only a marked limitation in this domain is supported by Dr. Dickson's opinion that he is only "moderately" limited in this area. (*Id.* (citing Tr. 18, 275)). The problem with this argument, however, is that the ALJ did not rely on Dr. Dickson's opinion in reaching his conclusion; in fact, both the ALJ and Dr. Liu (the state agency psychiatrist) *rejected* Dr. Dickson's opinion in this respect, finding that Plaintiff is markedly (not moderately) limited in this domain. Thus, Dr. Dickson's opinion also fails to provide support for the ALJ's conclusion.

In summary, the only evidence cited by the ALJ for his conclusion that Plaintiff is markedly limited in the domain of attending and completing tasks fails to provide support for this finding. Under the circumstances, the Court cannot find that the ALJ's determination is supported by substantial evidence and therefore recommends remand for a more comprehensive analysis of the evidence on this issue.

> b.   *The ALJ's Finding that Plaintiff Has a Less Than Marked Limitation In Acquiring and Using Information is Not Supported by Substantial Evidence*

The domain of acquiring and using information addresses how well a child acquires or learns information, and how well he uses the information he has learned. *See* 20 C.F.R.

17

§416.926a(g).   An adolescent should (1) continue to demonstrate in middle school and high school what he has learned in academic assignments; (2) be able to use what he has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation); (3) be able to comprehend and express both simple and complex ideas, using increasingly complex language, in learning and daily living situations; and (4) apply these skills in practical ways that will help in entering the workplace after school is finished.  *See* 20 C.F.R. §416.926a(g)(2)(v).   Examples of limited functioning in this domain include difficulty recalling important things learned in school previously; difficulty solving math problems; or talking only in short, simple sentences, with difficulty explaining what is meant.  *See* 20 C.F.R. §416.926a(g)(3).   School records are a significant source of information about limitations in this domain, so evidence of poor grades, inconsistent academic performance, and/or special education services indicates a limitation in this domain.  *See Soc. Sec. Rul.* 09-3p, 2009 WL 396025, at *3 (Feb. 17, 2009).

In concluding that Plaintiff has a "less than marked" limitation in the domain of acquiring and using information, the ALJ said only:

> School records continue to reveal that the claimant's academic skills are in some instances several grade levels below his actual grade.  However, the claimant appears to be progressing by at least one grade level in reading and math each year since beginning special education assistance.  The records also demonstrate that the claimant's math skills have jumped to only one grade below actual level this year (Exhibits 4E, 9E, 1F, 5F and 10F).

(Tr. 17).   Essentially, then, the ALJ cites two "facts" in support of his conclusion that Plaintiff's limitation in this domain is less than marked:  (1) he "appears to be progressing by at least one grade level in reading and math each year" since being placed in special education classes; and (2) his "math skills have jumped to only one grade below actual level this year."  (*Id.*).   The problem, however, is that neither of these "facts" is borne out by the record.

18

With respect to the ALJ's statement that Plaintiff had at least one grade level of improvement in math and reading each year after starting special education, the Commissioner concedes that this "appears to have been a mistake." (Doc. #24 at 24). Indeed, when Plaintiff was administered a standardized test in October 2009 – when he was in fifth grade – he scored at the 2.3 grade level in broad reading, the 2.5 grade level in broad written language, and the 3.3 grade level in broad math. (Tr. 246). When administered this same test in October 2012 – when he was in eighth grade – Plaintiff scored at the 3.5 grade level in broad reading, the 4.2 grade level in broad written language, and the 5.6 grade level in broad math. (Tr. 490). Thus, despite advancing three grades in school (from fifth to eighth), Plaintiff advanced just over one grade level in reading, one grade level in written language, and just over two grade levels in math. (Tr. 246, 490). Similarly, the ALJ's observation that Plaintiff's math skills jumped to "only one grade below actual level this year" (Tr. 17) is also inaccurate. As set forth above, Plaintiff's October 2012 broad math standardized test score indicates that he was performing at the 5.6 grade level – when he was in eighth grade – indicating that he was approximately 2.5 grade levels behind his actual grade level. (Tr. 490). Thus, there is little support for the ALJ's finding that Plaintiff's academic abilities have steadily improved.

Overall, where Plaintiff's teacher found that he has a "very serious problem" (again, the most extreme rating available to her on the form she was completing) comprehending oral instructions (Tr. 200), and where the only two "facts" articulated by the ALJ in support of his conclusion that Plaintiff has a less than marked limitation in the domain of acquiring and using information are not borne out by the record, the Court cannot conclude that the ALJ's decision in this regard is supported by substantial evidence.[6]

---

[6] Plaintiff also argues that the ALJ erred in failing to consider the effects of his ADHD on his

In summary, for all of the reasons set forth above, the ALJ's findings with respect to Plaintiff's limitations in the domains of attending and completing tasks and acquiring and using information are not supported by substantial evidence.  Because the result of a full and proper analysis of these issues could result in a conclusion that Plaintiff is disabled under the Act, the Court cannot conclude the ALJ's error was harmless, and therefore remand is appropriate.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [24] be DENIED, Plaintiff's Motion for Summary Judgment [21] be GRANTED IN PART, the ALJ's decision be REVERSED, and this case be REMANDED for further proceedings consistent with this Report and Recommendation.


Dated: May 8, 2015                          s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge


### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*,

---

ability to acquire and use information.  (Doc. #21 at 25).  The Commissioner concedes that the ALJ "did not mention ADHD in his specific explanation under this domain," but argues that this omission was harmless because Plaintiff's ADHD diagnosis "ran through the main body of the record."  (Doc. #24 at 22).  Although the Court is not persuaded that this omission – in and of itself – requires reversal, the ALJ should, on remand, consider and discuss the effects of Plaintiff's ADHD on his abilities in this domain, as well as in the domain of attending and completing tasks.

638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 8, 2015.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager